UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIERRA HERRIAGE and ) | |
| JESSE JENKINS, IV, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CAUSE NO.: 3:23-CV-60-JVB-AZ |
| ) | |
| FOREST RIVER INC., ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on Forest River, Inc.'s Motion for Summary Judgment[1] [DE 34] filed on July 26, 2024. Plaintiffs Tierra Herriage and Jesse Jenkins, IV responded on September 23, 2024. Forest River replied on October 18, 2024.

**PROCEDURAL BACKGROUND**

Plaintiffs initiated this cause of action by filing a complaint in this Court on January 25, 2023. In that pleading, Plaintiffs allege that Forest River has obligations under a warranty for a defective 2021 Berkshire motorhome sold to them by Forest River's authorized representative dealership. The complaint enumerates claims against Forest River for breach of warranty (express or implied) or contract, violation of obligations imposed by the Magnusson-Moss Warranty Act, and a consumer protection claim for which Plaintiffs invoke the Texas Deceptive Trade Practices-Consumer Protection Act (the DTPA).

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1] The motion's title represents that Forest River requests only partial summary judgment, but Forest River has asked for summary judgment on all claims brought against it.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying the evidence, if any, which it believes demonstrates the lack of a genuine issue of material fact. *Id.* at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, the burden shifts to the non-moving party to showing that an issue of material fact exists. *Keri v. Bd. of Tr. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

**MATERIAL FACTS**

Plaintiffs purchased a 2021 Forest River Berkshire motorhome from Fun Town Enterprises in Texas for approximately $237,000. The motorhome came with a manufacturer's limited warranty from Forest River. The warranty became effective on April 28, 2021, the date that

Plaintiffs picked up the motorhome, and provides that Forest River "warrants . . . for a period of one (1) year or twelve thousand (12000) miles, whichever occurs first . . . that the body structure of this recreational vehicle shall be free of substantial defects in materials and workmanship attributable to Warrantor." (Evans Aff. Ex. 1, ECF No. 37-1).

Within a couple weeks of purchase, Plaintiffs experienced water intrusion through the bedroom ceiling fan and took the motorhome to Fun Town to address the issue. The motorhome was at Fun Town from May 3-21, 2021. At her deposition, Herriage stated that everything was "satisfactorily repaired" at the May 2021 repair visit and clarified at the same deposition that she had a later problem with the leaking roof after this repair was complete. (Herriage Dep. 47:15-18, 102:24-103:7, ECF No. 37-1). At Jenkins's later deposition, he did not recall anything from Herriage's deposition that he disagreed with or wanted to clarify. (Jenkins Dep. 4:23-5:6, ECF No. 40-30).

In October 2021, Plaintiffs noted further leaking from the roof and took the motorhome to Fun Town for repair, where it remained from October 28, 2021, through November 20, 2021. Plaintiffs insist the roof leak was not fixed after this visit. Plaintiffs continued to notice roof leaks when it rained in July and August 2022.

From July 18, 2022, to August 11, 2022, the motorhome was at Absolute Mobile RV Repair in Canton, Texas, for roof repairs, but this visit was not submitted to Forest River for warranty payment. Absolute applied sealant to the roof. When the motorhome returned to Absolute on August 20, 2022 (for a disputed number of days), the ceiling was sagging, and Absolute prepared an estimate for replacing the roof and ordered ceiling panels from Forest River.

3

On September 6, 2022, Mitch Wirt at Forest River instructed Absolute to submit a warranty claim for the roof leak and damage, and specifically told Absolute to reference his name so the claim would not be rejected.

After September 29, 2022 (and perhaps as late as December 12, 2022), the motorhome was returned to Absolute, and when Absolute pulled down the ceiling panels, it discovered extensive water damage and indoor mold growth behind the panels. Based on this discovery, Forest River decided to replace the roof at its factory service center, where the motorhome was located from December 12, 2022, to mid-February 2023. During this time with Forest River, the roof leak and internal damage were confirmed, and the entire roof was replaced.

Beginning in June 2022, Jenkins would have coughing and trouble breathing when he stayed in the motorhome for any amount of time. On December 16, 2023, an Indoor Environmental Quality Consultant retained by Plaintiffs detected a slight mold odor and confirmed the presence of Chaetominium globosum (a mold indicative of heavy water damage) and of 11 families of mold mycotoxins known to cause serious health concerns, including allergenic and toxigenic effects, carcinogenic changes, skin and nail infections, immunosuppressive effects, neurodevelopmental disorders, and liver and kidney damage.

Plaintiffs have borne the stress of cancelled and rescheduled vacation plans and loss of nonrefundable deposits. Herriage has an indoor and outdoor mold allergy, and when she is in the RV for any extended amount of time, she gets hives throughout her body and her eyes swell, so she is afraid to even get in the RV at all. Jenkins cannot enter the RV without coughing because of the mold. Finally, Plaintiffs have lost sleep and had constant stress from making monthly loan payments and insurance payments on a motorhome Plaintiffs feel is worthless because they cannot use it.

## ANALYSIS

### A. Breach of Express Warranty

The parties agree that Indiana substantive law controls the breach of warranty claim. Under Indiana law, there are four elements to a breach of warranty claim: "(1) the existence of a warranty, (2) a breach, (3) causation, and (4) damages." *Mathews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 622 (7th Cir. 2019) (citing *Peltz Const Co. v. Dunham*, 436 N.E.2d 892, 894 (Ind. Ct. App. 1982)). Forest River contends that summary judgment should be granted in its favor on this claim because it was brought outside the statute of limitations and because there is no breach.

*1.    Statute of Limitations*

Regarding the statute of limitations, the general rule in Indiana[2] is that a breach of warranty claim must be brought within four years from the time that the claim accrued. Ind. Code § 26-1-2-725(1). However, the statute permits the parties to a warranty to shorten the allotted time for bringing such a claim to not less than one year. *Id.*

There is no dispute that the motorhome came with a one-year, 12,000-mile manufacturer's limited warranty from Forest River and that the warranty became effective on April 28, 2021, and expired on April 28, 2022. Plaintiffs assert, however, that the clause shortening the period for bringing a claim to within 90 days of the warranty's expiration is unenforceable because Ind. Code § 26-1-2-725(1) does not apply and, alternatively, because the warranty extends to future performance.

---

[2] "[F]ederal law deems both statutes of limitations and choice-of-law rules as 'substantive' no matter whether a state might characterize them differently. Thus, statutes of limitations, and any rules that are an integral part of the statute of limitations, are part of the forum state's substantive law." *Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 346 (N.D. Ind. 2021) (citations and quotation marks omitted). Accordingly, the federal court sitting in diversity must apply the statutes of limitations that the forum state's courts would apply. *Id.* Since *Indiana* views its statutes of limitations as procedural, though, Indiana courts do not engage in a choice of law analysis for statutes of limitations and instead apply their own statutes, even if another state's substantive law governs a claim. *Id.* at 347.

Indiana Code § 26-1-2-725(1) provides that "[a]n action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year, but may not extend it." Plaintiffs argue that their breach of warranty claim is not a claim for breach of contract for sale and, therefore, the statute does not apply.

Still, the paragraph immediately following the part of § 26-1-2-725 quoted above specifically discusses breach of warranty and when a cause of action for such a breach accrues. *See* Ind. Code. § 26-1-2-725(2). Further, Plaintiffs, in their complaint, alleged that Forest River's warranty was "part of the transaction" wherein Plaintiffs acquired the motorhome. (Compl. ¶ 12, ECF No. 1). The indications are that both parties and the State of Indiana consider the warranty be part of the "contract for sale," and it is therefore governed by § 26-1-2-725(1).

Plaintiffs next argue that the warranty "explicitly extends to future performance" and the breach of warranty action therefore accrues when breach is or should have been discovered. Ind. Code § 26-1-2-725(2). There are three requirements for a warranty to be one for future performance: "(1) it must be an explicit promise or guarantee, (2) it must concern the characteristics of the goods themselves, and (3) it must identify a specific future time period during which the goods will conform to that guarantee." *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 380 (Ind. 2019). A mere promise "only to repair and replace defects rather than warrant against future defects" is not a future-performance warranty. *Id.* That the promise to repair or replace is for a specified length of time (extending into the future) or number of miles (to be travelled in the future) does not convert a warranty into a future-performance warranty. *Merchain v. Thor Motor Coach, Inc.*, 577 F. Supp. 3d 886, 895 (N.D. Ind. 2021).

6

Here, the warranty states that Forest River "warrants . . . for a period of one (1) year or twelve thousand (12000) miles, whichever occurs first . . . that the body structure of this recreational vehicle shall be free of substantial defects in materials and workmanship attributable to Warrantor." (Evans Aff. Ex. 1, ECF No. 37-1). The three requirements are met. The promise is explicit because Forest River "warrants" to Plaintiffs the specified terms. *Id.* Second, the matter warranted is that "the body structure of this recreational vehicle shall be free of substantial defects in materials and workmanship attributable to Warrantor." *Id.* This concerns the characteristics of the motorhome itself. The one-year/12,000-mile time limitation meets the third requirement.[3]

Forest River counters that its only obligations are to remedy defects by repair or replacement. This accurately states obligations Forest River took on under the warranty but does not negate that Forest River also explicitly warranted the vehicle to be free of substantial defects for the one-year/12,000-mile term of the warranty. In *Kenworth*, Indiana's Supreme Court found that if the promise was "only to repair and replace defects rather than warrant against future defects," then the warranty is not a future-performance warranty. 134 N.E.3d at 380. However, because Forest River warranted against *future* defects in addition to its promise to repair and replace defects, *Kenworth* directs that the warranty here is one for future performance.

For future performance warranties, "the cause of action accrues when the breach is or should have been discovered." Ind. Code. § 26-1-2-725(2). As discussed above, the parties can agree to reduce the limitations period no less than one year after the action accrued. Ind. Code. § 26-1-2-725(1). Thus, to establish whether Plaintiffs' breach of warranty claim is timely, it must be known when the breach was or should have been discovered. "[K]nowing or discovering who

---

[3] By comparison, the warranty found to be for future performance in *Kenworth* provided: "Kenworth Truck Company warrants directly to you that the Kenworth vehicle . . . will be free from defects in materials and workmanship during the time and mileage periods set forth in the Warranty Schedule and appearing under normal use and service." 134 N.E.3d at 374.

breached what contractual obligation is not a demanding standard" and Indiana "does not require a smoking gun" for the cause of action to accrue. *Kenworth*, 134 N.E.3d at 381. "Rather, a cause of action accrues, and the limitations period begins, when the circumstances involving contractual rights and obligations put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist." *Id.* (quotation marks and citation omitted).

The warranty purports to require actions to enforce the warranty to be brought within ninety days of the expiration of the warranty period. Because this is a warranty for future performance and accrual occurs when breach is or should have been discovered, the warranty provision does not, in every circumstance, comply with Indiana law. For example, a defect that is or should have been discovered six months into the warranty period would only be given nine months after accrual for the filing of an action—the remaining six months of the warranty period plus 90 days—thus violating Indiana's statute requiring at least one year after a claim's accrual for filing. *See* Ind. Code. § 26-1-2-725(1).

A reasonable jury could find that to be essentially what happened here. An initial leak was discovered in April or May 2021 and addressed—seemingly repaired—within the month. A reasonable jury may find that this was insufficient to alert Plaintiffs to their claim. However, with the continued problem with water intrusion noted in October 2021 (approximately six months after the warranty began), perhaps a reasonable jury would find that Plaintiffs should have discovered the mold issue, with the claim accruing at that time. Accordingly, by statute, the parties could not agree to reduce the limitations period to less than one year from the date of accrual (meaning suit could be brought until October 2022), but the warranty provision has the period ending 90 days after the expiration of the warranty, which upon calculation is July 27, 2022.

8

"Generally, a contract made in violation of a statute is void." *Harbour v. Arelco, Inc.*, 678 N.E.2d 381, 385 (Ind. 1997) (citation omitted). "However, if a contract contains an illegal provision which can be eliminated without frustrating the basic purpose of the contract, the court will enforce the remainder of the contract." *Id.* (citations omitted). Here, the basic purpose of the contract—warranting the motorhome to "be free of substantial defects in material and workmanship attributable to Warrantor" for one year—is not frustrated by removing the provision limiting the time to bring suit for breach of the express warranty. The limitations provision can be excised from the warranty, and the Court does so here. Summary judgment on this claim is not appropriate on the argument that Plaintiffs' suit was not brought before the time to do so expired.

2.    *Breach*[4]

Indiana law requires a purchaser to give a warrantor a "reasonable opportunity" to repair defects before the purchaser may bring a breach of warranty claim. *Zylstra v. DRV, LLC*, 8 F.4th 597, 601 (7th Cir. 2021). "[A] reasonable opportunity to cure, at least in cases where the defects are somewhat minor, and not affecting full use of the vehicle, means at least three chances." *Id.* at 603; *accord Massey v. Nexus RVs, LLC*, 680 F. Supp. 3d 1051, 1061 (N.D. Ind. 2023). With a major defect that renders the warranted item "completely unusable for its intended purpose," fewer than three opportunities to cure may be reasonable. *Zylstra*, 8 F.4th at 602. In *Doman v. Heartland Recreational Vehicles, LLC*, for example, Judge DeGuilio of this court found no obligation for the purchasers to present a recreational vehicle for repair three times when that vehicle had been totally consumed by fire. No. 3:23-cv-218, 2023 WL 6637619, at *4 (N.D. Ind. Oct. 12, 2023).

The parties do not dispute that Plaintiffs presented the motorhome for warranty repairs for the roof leaking water on May 3, 2021, and October 28, 2021. Plaintiffs have submitted evidence

---

[4] Though the parties identify many defects with the motorhome, the crux of the complaint is about the water intrusion and resulting damage. Since the parties focus their argument on this primary issue, the Court follows suit.

that, due to mold growth resulting from the water intrusion, Herriage breaks out in hives and her eyes swell when she enters the motorhome, and Jenkins cannot enter the motorhome without coughing.

Forest River argues that defects must be considered individually. To a point, Forest River is correct. Repairs to the leveling system or wiring are not repair attempts for the roof. However, the focus of Plaintiffs' complaint is about the water intrusion from the defective roof that caused interior mold growth. The mold is not itself a separate *defect*—there is no argument that Forest River delivered the motorhome to Plaintiffs with mold contamination already present, for example—instead, the argument is that the mold is *damage* that resulted from the roof defect.

Forest River highlights Herriage's testimony at her deposition that everything was "satisfactorily repaired" at the May 2021 repair visit. (Herriage Dep. 47:15-18, ECF No. 37-1). Herriage clarified in the same deposition that she had a later problem with the leaking roof after this repair was complete. *Id.* 102:24-103:7. At Jenkins's later deposition, he did not recall anything from Herriage's deposition that he disagreed with or wanted to clarify. (Jenkins Dep. 4:23-5:6, ECF No. 40-30). Perhaps a jury would see the evidence in a way that favors Forest River's position, separating one roof leak from another, but at the summary judgment stage, the question is not whether Forest River (as the movant) could win at trial but, instead, whether Plaintiffs could.

Similarly, Forest River contends that Dennis Bailey, Plaintiffs' expert, cannot contradict his prior testimony with a later-in-time affidavit. At his deposition, Bailey said that he did not see "water intrusion coming from the roof" though he did see "water intrusion on the slide outs." (Bailey Dep. 104:6-12, ECF No. 37-3). At the very same deposition, though, Bailey said that the roof was not properly repaired and explained that the lack of visible water during his examination was due to the length of time of his testing of the vehicle and that "[i]t will take probably a period

10

of time for the water to come inside there." *Id.* 102:8-103:5. Thus, there is deposition testimony that supports Bailey's statement in his affidavit that the roof repair was not properly fixed, causing water intrusion. *See* (Bailey Aff. ¶ 7, ECF No. 40-27).

Though not as extreme as a loss to fire, the motorhome in this state—as seen when viewing the evidence in the light most favorable to Plaintiffs—is not usable by Plaintiffs and has a major defect.[5] Whether Forest River was given a reasonable opportunity to cure the defect is a question for the jury to decide, and summary judgment is not appropriate on this basis. The Court denies the request for summary judgment on this claim.

### B. Breach of Implied Warranty

Forest River argues for summary judgment on the implied warranty claim because it violates the statute of limitations and because Forest River was not given a reasonable opportunity to repair or replace the defects.

Regarding limitations periods for implied warranties, 15 U.S.C. § 2308 (part of the Magnusson-Moss Warranty Act) provides:

> (a) Restrictions on disclaimers or modifications
> No supplier may disclaim or modify (except as provided in subsection (b)) any implied warranty to a consumer . . . .
>
> (b) Limitation on duration
> For purposes of this chapter (other than section 2304(a)(2) of this title), implied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty.
>
> (c) Effectiveness of disclaimers, modifications, or limitations
> A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this chapter and State law.

---

[5] Forest River argues that Plaintiffs were able to use the motorhome in July and August 2022 while the roof was still leaking, but this does not account for the state of the motorhome after the damage from the indoor mold growth set in.

Plaintiffs focus on subsection (a) to argue that Forest River cannot shorten the limitations period. However, as Forest River correctly identifies, subsection (b) controls as the applicable exception to subsection (a). As such, Forest River was permitted to shorten the duration of the implied warranty to the duration of the written warranty, provided that the limitation is of reasonable duration, conscionable, and set forth clearly and prominently on the written warranty. As discussed above, though, the limitation is not reasonable or conscionable because it violates Indiana law by shortening the time to bring suit on some claims under the future performance warranty to less than one year after accrual. It is not enforceable under Indiana law as to the written warranty, and it is therefore not an acceptable limitation on the implied warranty's duration under § 2308(b).

As with the express warranty claim, Forest River contends that it was not given a reasonable opportunity to repair the defect under *Zylstra*, but as also discussed above, the "at least three" repair attempt minimum is not necessarily required for a reasonable opportunity to repair major defects, and a reasonable jury could find that the motorhome has a major defect, which Forest River was given a reasonable opportunity to repair. The Court denies summary judgment on the implied warranty claim.

### C. Breach of Contract

Plaintiffs present two theories for their breach of contract claim: (1) the warranty failed its essential purpose, and (2) there was a contract for Forest River to take care of any damage resulting from the roof leak.

#### 1. Failure of Essential Purpose

"Indiana law recognizes a mechanism to redress the loss of all 'bargained-for' remedies not thereafter given as promised." *Martin v. Thor Motor Coach, Inc.*, 602 F. Supp. 3d 1087, 1096

(N.D. Ind. 2022). "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in [Indiana Code §] 26-1." Ind. Code § 26-1-2-719(2). For example, if a vehicle cannot "be repaired so as to operate free of defects as promised in [an] express warranty," then "[t]he exclusive remedy of repair and replacement of defective parts fail[s] of its essential purpose." *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1086 (Ind. 1993), *abrogated on other grounds by Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947 (Ind. 2005).

Forest River's argument that the warranty did not fail its essential purpose is, once again, that Forest River was not afforded a reasonable opportunity to repair the defect. So, as before, the argument fails because a reasonable jury could disagree.

### 2. *Contract for Leak Damage*

Under Indiana law, "[t]he elements of a valid contract are offer, acceptance, consideration, and a meeting of the minds of the parties who are entering the contract." *Bassett v. Scott Pet Prods., Inc.*, 194 N.E.3d 1185, 1192 (Ind. Ct. App. 2022). Plaintiffs argue that they had a contract with Forest River where, in exchange for Plaintiffs permitting Forest River to transport the motorhome to its factory, Forest River would repair the motorhome's roof defect and the resulting damage. In support of the existence of this contract, Plaintiffs cite the following sections of their statement material facts:

> 102. So, on October 25, 2022, Tierra and Jerry followed up with Forest River about the approval status of the warranty claim. In response, Mitch Wirt, on behalf of Forest River, represented to them that he had "gone in and taken care of the claim" submitted by Absolute and that "Absolute Mobile can move forward with the repair," and "[a]ny damage resulting from the leak should be taken care of."
>
> . . .
>
> 107. As a result, Forest River decided it was going to come pick up the RV and perform the repairs at its factory.

> 108. On December 18, 2022, Forest River had the RV transported to its factory service center for a final repair opportunity for the roof leak and resulting water damage causing the ceiling fan and A/C to be inoperable as well as any mold damage.

(Pls.' Statement Nos. 102, 107-108, ECF No. 40 (citations to evidence omitted)).

Assuming that the evidence supports Plaintiffs' statements,[6] there is insufficient material here from which to determine that a contract existed. There is no offer and acceptance. Plaintiffs only state that Forest River authorized a repair at Absolute and, later, at the Forest River factory. There is no description of Plaintiffs' "acceptance" of any offer that required them to provide consideration. Though Plaintiffs contend that they permitted Forest River to transport the motorhome to the factory, their stated facts (the only citation provided in support of there being consideration) do not show this to be consideration for the contract. *See Bassett*, 194 N.E.3d at 1192 (Ind. Ct. App. 2022) ("To constitute sufficient consideration to create a contract, a benefit must accrue to the promisor, or a detriment must accrue to the promisee.").

Plaintiffs have not met their burden to present evidence of a contract for the repair of the leaky roof, so the Court grants summary judgment as to this argument.

### D. Magnusson-Moss Warranty Act

The parties agree that Indiana law controls the Magnusson-Moss Warranty Act claim and that this claim rises and falls with the Indiana state-law breach of warranty claim. Accordingly, since the Indiana state-law claim survives summary judgment, so too does this claim.

### E. Consumer Protection

The final claim Plaintiffs bring, and which Forest River seeks summary judgment in its favor on, is a consumer protection claim, for which Plaintiffs cite Texas's DTPA.

---

[6] Forest River admits to the statements at 102 and 107 and responds to 108 that it was not provided a final repair opportunity under the warranty for the indoor mold growth while admitting the remainder of 108.

14

*1. Choice of Law*

The parties disagree on which state's law—Indiana's or Texas's—should apply to the consumer protection claim. Plaintiffs invoked Texas law in bringing this claim in their complaint. Forest River contends that the consumer protection claim is for breach of the Limited Warranty, which by its terms is governed by Indiana law, so a claim cannot be brought under Texas law. Forest River also maintains that if the consumer protection claim also sounds in tort that Indiana's choice-of-law analysis would lead to the application of Indiana—not Texas—law. Plaintiffs disagree, maintaining that Texas law applies to the consumer protection claim.

When the Court hears claims under diversity jurisdiction, which is the case here, it applies the choice of law principles of Indiana, since the Court is geographically located in the state of Indiana. *See W. Bent Mut. Ins. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013). The Court need not resolve the question of which state's substantive law to apply to claims unless there is "a conflict between state laws important enough to affect the outcome of the litigation." *Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 357 (N.D. Ind. 2021) (quoting *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004) (internal quotation marks omitted)).

"Generally, Indiana courts will give effect to the parties' agreement as to controlling law." *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 306 (Ind. Ct. App. 2014) (citations omitted). Thus, the first step is to determine whether the parties agreed regarding the choice of law. When facing a conflict of laws, Indiana courts do not analyze different *issues* within the same claim separately to potentially apply different states' laws to the various issues raised in a single claim. *Simon v. United States*, 805 N.E.2d 798, 801 (Ind. 2004). However, Indiana courts will analyze each *claim* brought in a lawsuit separately. *Id.* Therefore, the parties' agreement that the other claims are governed by Indiana law has no bearing on the law to apply to the consumer protection claim.

15

There is no choice-of-law agreement applicable to the consumer protection claim. The warranty provides that "[t]he terms, conditions, rights and responsibilities *of this warranty* shall be governed by the laws of the State of Indiana notwithstanding any other state laws," (Aff. Evans Ex. 1, ECF No. 37-7 (emphasis added)), but this is a consumer protection claim, not a warranty claim, even though, as the Court will discuss later, the consumer protection claim is closely connected to the warranty. Still, to read the choice-of-law provision in the warranty as governing consumer protection claims in addition to the interpretation of the warranty stretches the agreement beyond its boundaries.

Citing *Popham v. Keystone RV Co.*, No. 3:15-CV-197, 2016 WL 4993393 (N.D. Ind. Sept. 19, 2016), Forest River argues that the relevant state consumer protection laws—the Indiana Deceptive Consumer Sales Act and the Texas Deceptive Trade Practices Act—are in conflict. Plaintiffs do not dispute the existence of a conflict, though they argue that the question of which law to apply is moot because they did not bring an "alternative" claim under the Indiana statute. With no argument against *Popham*, the Court adopts the reasoning in that decision to reach the conclusion that there is an important conflict of laws between the Texas and Indiana consumer protection statutes. *See* No. 3:15-CV-197, 2016 WL 4993393, at *9-10.

With no choice-of-law agreement and facing of a conflict of laws, Indiana courts apply the appropriate choice-of-law rule to the claim. The parties agree that Indiana courts would use the choice-of-law rules for tort claims to determine what law to apply to a consumer protection claim. *See* (Def.'s Br. at 10, ECF No. 25); (Pls.' Resp. at 2, ECF No. 41). Indiana uses the *lex loci delicti* rule for tort claims, which means "the law of the place where the tort was committed is the law of the resulting litigation." *Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983). This, in turn, means Indiana courts apply the law of "the state where the last event necessary to

16

make an actor liable for the alleged wrong takes place," *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004) (citation omitted). Indiana recognizes an exception to this rule if the cause of action has only a little connection to the legal action *Id.*

The actions that allegedly violated consumer protection laws are (1) promises to repair water leaks and associated damage, thereby misrepresenting the benefits and quality of the factory repair services and lulling Plaintiffs into reliance on those promises to Plaintiffs' detriment, (2) representing to Plaintiffs that they had warranty rights after Forest River believed the warranty period ended as well as stalling and delaying repairs, thereby misrepresenting Plaintiffs' warranty rights, (3) misrepresenting the motorhome's use, benefits, standard, and quality by holding it out as a luxury motorhome that was safe and capable of use for recreational travel and camping when it in reality had many defects that rendered it unusable to Plaintiffs, and (4) breach of warranty.

Like Judge Simon noted in *Andersen v. Thor Motor Coach, Inc.*, 402 F. Supp. 3d 467, 482 (N.D. Ind. 2019), the "laundry list approach to pleading" used by Plaintiffs for the DTPA claim does little to clarify the issues for choice-of-law analysis. Still, it appears that the main allegations of wrongful actions are misrepresentations made in enticing Plaintiffs to purchase the motorhome, in authorizing warranty repairs, and in promising to repair defects. The sale of the motorhome occurred in Texas (so this would be where the warranty was agreed to as part of the sale contract), as did multiple repair attempts for water intrusion issues. The indoor mold growth was discovered at Absolute in Canton, Texas. It is true that Forest River's acceptance of the motorhome for repairs (regardless of whether it was for "warranty" repair or as a "good will" measure) came from Indiana and that one repair attempt occurred in Indiana, but on the whole, the Court finds that, when forced to choose a single location where the purported deceptive trade practices occurred, Texas wins out over Indiana. *Cf. id.* at 483 (finding "Texas, rather than Indiana, is better characterized as the place

17

where deceptive trade practices and the resulting loss occurred" in that case). Texas bears more than a little connection to this lawsuit. Accordingly, the Court concludes that Indiana courts would apply Texas law, so this Court follows suit.

    2.    *Statute of Limitations*

Though Texas *substantive* law applies, Indiana's *procedural* law—including Indiana's statute of limitations—applies. *See supra* note 5. Under Indiana law, the general rule is that tort claims must be brought within two years of the action accruing. Ind. Code § 34-11-2-4(a). Indiana's own Deceptive Consumer Sales Act provides the same limitations period of two years for claims not brought by the attorney general. Ind. Code § 24-5-0.5-5(b). Plaintiffs bought the motorhome in April 2021 and filed suit in January 2023. There is no argument before the Court that two years elapsed from the accrual of the cause of action to the filing of the lawsuit. The statute of limitations provides no basis on which to grant summary judgment on this claim.

    3.    *Merits*

To prevail on a DTPA claim, a plaintiff must establish (1) the plaintiff is a "consumer," (2) the defendant can be sued under the DTPA, (3) the defendant committed a wrongful act by engaging in a false, misleading, or deceptive act from the "laundry list" in Texas Business and Commercial Code § 17.46(b) or breached an express or implied warranty, or engaged in an unconscionable action or course of action, and (4) that the defendant's act was a producing cause of the plaintiff's damages. *Godfrey v. Sec. Serv. Fed. Credit Union*, 356 S.W.3d 720, 725 (Tex. App. 2011). Forest River argues that Plaintiffs DTPA claim is barred by the economic loss doctrine. Because this is the sole argument under Texas's DTPA that Forest River raises in its brief supporting the motion for summary judgment, the Court considers this argument only.

Forest River's argument is largely based on the false premise that breach of contract and breach of warranty are treated equally under the DTPA. Texas's Supreme Court holds that nonperformance on a *contract* is not actionable under the DTPA. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 12 (1996). Texas's economic loss doctrine "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a *contract*." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (emphasis added). On the other hand, however, a breach of *warranty* is specifically allowed to underpin a DTPA claim. *Godfrey v. Sec. Serv. Fed. Credit Union*, 356 S.W.3d 720, 725 (Tex. 2011); *see also* Tex. Bus. & Com. Code § 17.44(a) ("This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against . . . breaches of warranty.").[7] "Under the [DTPA], breach of an express or implied warranty that is a 'producing cause of economic damages or damages for mental anguish' can support a claim." *Andersen*, 402 F. Supp. 3d at 483 (quoting Tex. Bus. & Com. Code § 17.50(a)(2)).

Plaintiffs assert that Forest River failed to deliver on its promise to repair the damage to the motorhome, which Plaintiffs also characterize as a misrepresentation of the benefit, standard, and quality of the factory repair services. Plaintiffs continue, arguing that Forest River stalled and delayed in performing repairs to the motorhome. In other words, Plaintiffs allege that Forest River breached the express warranty. Forest River's argument that a breach of *contract* cannot support a DTPA claim for economic loss only does not apply to this argument that there was a breach of *warranty*. Forest River is not entitled to summary judgment on the DTPA claim.

---

[7] *But see Holubets v. Forest River, Inc.*, No. A-21-CV-01004-LY, 2022 WL 903430, at *3 (W.D. Tex. Mar. 28, 2022) (R. & R.) (applying the economic loss doctrine to a DTPA claim based on breach of warranty) *approved and accepted*, 2022 WL 2762214 (May 4, 2022). The Court follows the Texas Supreme Court's decision in *Godfrey* and declines to follow the unpublished guidance in *Holubets*.

## CONCLUSION

Based on the above, the Court hereby **GRANTS in part and DENIES in part** Forest River, Inc.'s Motion for Summary Judgment [DE 34]. The motion is granted as to the argument of breach of contract regarding Forest River's December 2022 repair attempt and denied as to the other breach of contract argument and as to all other claims.

SO ORDERED on February 12, 2025.

s/ Joseph S. Van Bokkelen<br>
JOSEPH S. VAN BOKKELEN, JUDGE<br>
UNITED STATES DISTRICT COURT